**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WM. WRIGLEY JR. COMPANY, | |
| Plaintiff, | Civil Action No. |
| v. | **JURY TRIAL DEMANDED** |
| PACKAGING PAPI, LLC; ALEXANDER GODBOUT; EVERYDAYTACTICAL d/b/a DRIPPACKAGING; and BRADLEY LYSAGHT, | |
| Defendants. | |

**COMPLAINT FOR FEDERAL CONTRIBUTORY COUNTERFEITING;
FEDERAL TRADEMARK INFRINGEMENT;
FEDERAL TRADEMARK DILUTION, FEDERAL UNFAIR COMPETITION;
VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT;
AND COMMON LAW TRADEMARK INFRINGEMENT**

Plaintiff Wm. Wrigley Jr. Company ("Wrigley"), by and through its attorneys, Loeb & Loeb LLP, for its complaint against Packaging Papi, LLC ("Packaging Papi"), Alexander Godbout ("Godbout" and, collectively with Packaging Papi, the "Packaging Papi Defendants"), Everydaytactical d/b/a DripPackaging ("DripPackaging"), and Bradley Lysaght ("Lysaght" and, collectively with DripPackaging, the "DripPackaging Defendants") (together, the Packaging Papi Defendants and DripPackaging Defendants are herein referred to as "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action seeking damages and injunctive relief for willful contributory trademark counterfeiting, trademark infringement, dilution, and unfair competition under the laws of the United States, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.* and Illinois common law.

2.     Wrigley was founded in 1891 in Chicago, Illinois and has become a leading manufacturer of candy and owns many iconic brands, including SKITTLES® and STARBURST®.  For decades, Wrigley has sold SKITTLES® and STARBURST® candies to customers throughout the United States.  Wrigley brings this action to stop a serious and potentially dangerous violation of its famous SKITTLES® and STARBURST® trademarks.

3.     Defendants are misappropriating Wrigley's famous and federally-registered trademarks for use on packaging that is marketed and sold empty to third-party cannabis retailers.  These cannabis retailers fill the packaging with edible products that are often genuine SKITTLES® or STARBURST® candies infused with or otherwise containing tetrahydrocannabinol ("THC"), the main psychoactive component of cannabis, and the edible products are marketed and sold to consumers—all without the authorization of Wrigley.

4.     Defendants' unauthorized and infringing use of Wrigley's famous trademarks endangers the public and is likely to cause confusion and damage Wrigley's valuable rights. Defendants' unlawful actions are a danger to children and adults who may mistakenly ingest the edible cannabis products thinking them to be Wrigley's genuine SKITTLES® or STARBURST® candies, when they are not, and unknowingly and unwillingly subjecting themselves to doses of THC, sometimes in very large and unsafe quantities.  Tragically, news reports validate these concerns, indicating an increasing number of incidents where children have mistaken cannabis edibles for candy, sometimes requiring hospitalization.

5.     Wrigley brings this action to stop Defendants' conduct that causes irreparable injury to Wrigley, deceives the public as to the source and sponsorship of Defendants' products, and harms the public, including customers in Illinois.

**THE PARTIES**

6.      Wrigley is a Delaware corporation with its principal place of business in Chicago, Illinois.

7.      Defendant Packaging Papi, LLC is a Florida limited liability company with its principal place of business at 3200 Summit Blvd., Suite 15304, West Palm Beach, Florida, 33416.

8.      Upon information and belief, defendant Alexander Godbout is a resident of Palm Beach County, Florida and is the manager of Packaging Papi, having personally participated in, directed Packaging Papi's employees to engage in, or otherwise authorized and approved the infringing activities described herein.

9.      Defendant Everydaytactical d/b/a DripPackaging is a Maryland sole proprietorship with its principal place of business at 45819 Bethfield Way, California, Maryland, 20619.

10.     Upon information and belief, defendant Bradley Lysaght is a resident of St. Mary's County, Maryland and is the principal of DripPackaging, having personally participated in, directed DripPackaging's employees to engage in, or otherwise authorized and approved the infringing activities described herein.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over Wrigley's claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.  Wrigley's claims arise under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  Wrigley's state law claims arise from the same operative facts or are otherwise so related to its Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

12.     Personal jurisdiction over Defendants is proper because Defendants operate interactive Internet stores whereby they intentionally offer for sale to residents of the State of Illinois packaging for cannabis products which infringe on Wrigley's trademarks, knowingly causing injury to Wrigley in the State of Illinois.  The website operated by the Packaging Papi Defendants is located at https://www.packagingpapi.com/, and the website operated by the DripPackaging Defendants is located at https://www.drippackaging.com/.  These interactive commercial websites allow Illinois customers to purchase fake packaging prominently bearing the SKITTLES® and STARBURST® marks.

13.     Defendants also transact business in Illinois and have sufficient minimum contacts with the State of Illinois.  Defendants have purposefully availed themselves of the benefits of doing business in Illinois by transacting business in Illinois and can reasonably anticipate being hauled into court in Illinois.

14.     Any confusion in the marketplace caused by Defendants' conduct is taking place in Illinois.  As a result, the harm and injury felt by Wrigley arises from Defendants' conduct in Illinois—Wrigley's residence for more than 100 years.

15.     Therefore, the Court has personal jurisdiction over Defendants pursuant to the Illinois long-arm statute, 735 ILCS §§ 5/2-209 *et seq*., and such assertion is in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

## I.     WRIGLEY'S FAMOUS TRADEMARKS

17.     Wrigley is a recognized global leader in confections and, together with its affiliates, offers a wide range of product offerings including gum, mints, and candies.  Wrigley

markets products under dozens of well-known, distinctive, and famous brands, including

SKITTLES®, STARBURST®, DOUBLEMINT®, JUICY FRUIT®, and LIFE SAVERS®, to

name a few.

18.     Wrigley and its predecessors have long marketed candy and related products

under the famous SKITTLES® mark and trade dress, which features, among other things, the

word mark SKITTLES® in white block lettering, distinctive rainbow designs, distinctive candy-

coated lentils with an "S" imprinted thereon, and a cascade design of these candy lentils

(hereinafter referred to as the "Skittles Trade Dress"), examples of which are shown below:







19.     For 50 years, Wrigley and its predecessors-in-interest have continuously used the SKITTLES® mark to advertise, promote, and sell candy throughout the United States.

20.     Wrigley has earned billions of dollars in revenues from the sale of SKITTLES® candy in the United States.  Many millions of people throughout the country have purchased or consumed SKITTLES® candy.  In fact, SKITTLES® candy has been the best-selling non-chocolate candy in the United States for years.

21.     Wrigley has invested many millions of dollars to promote SKITTLES® candy. Wrigley's advertisements and commercials for SKITTLES® have been seen by many millions of people nationwide.  Wrigley advertises SKITTLES® candy during the Super Bowl and other highly watched events.

22.     Based on the wide-spread and long-standing use and recognition of the SKITTLES® brand, Wrigley enjoys extensive trademark rights in the SKITTLES® mark and the Skittles Trade Dress.

23.     Wrigley owns numerous federal registrations for its SKITTLES® mark and the Skittles Trade Dress, including, but not limited to, U.S. Reg. Nos. 1,221,105; 2,535,714; 4,377,303; and 4,983,664 (such federal registrations, collectively with the common law trademark rights in the SKITTLES® mark and Skittles Trade Dress, are hereinafter referred to as the "SKITTLES® Mark and Trade Dress").

6

24.     Similarly, Wrigley and its predecessors have long marketed candy and related products under the famous STARBURST® mark and trade dress, which features, among other things, the word mark STARBURST® in stylized lettering and distinctive wrappers with an "S" imprinted thereon (hereinafter referred to as the "Starburst Trade Dress"), examples of which are shown below:





25.     For 50 years, Wrigley and its predecessors-in-interest have continuously used the STARBURST® mark to advertise, promote, and sell candy throughout the United States.

26.     Wrigley has earned billions of dollars in revenue from the sale of STARBURST® candy in the United States.  Many millions of people throughout the country have purchased or consumed STARBURST® candy.

27.     Wrigley has invested many millions of dollars to promote STARBURST® candy. Wrigley's advertisements and commercials for STARBURST® have been seen by many millions of people nationwide.

28.     Based on the wide-spread and long-standing use and recognition of the STARBURST® brand, Wrigley enjoys extensive trademark rights in the STARBURST® mark and the Starburst Trade Dress.

29.     Wrigley owns numerous federal registrations for its STARBURST® mark and trade dress, including, but not limited to, U.S. Reg. Nos. 1,000,007; 1,545,544; 4,179,436; 4,268,392; and 4,625,960 (such federal registrations, collectively with the common law trademark rights in the STARBURST® mark and Starburst Trade Dress, are hereinafter referred to as the "STARBURST® Mark and Trade Dress").

30.     Each of the above-referenced trademark registrations are valid, subsisting, and in full force under 15 U.S.C. § 1065, and, together with Wrigley's extensive common law rights, make the SKITTLES® Mark and Trade Dress and the STARBURST® Mark and Trade Dress (collectively, the "Wrigley Trademarks") valuable assets owned by Wrigley.

31.     The Wrigley Trademarks with Registration Nos. 1,221,105; 2,535,714; 4,377,303; 1,000,007; 1,545,544; 4,179,436; 4,268,392; and 4,625,960 are incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b).

32.     Pursuant to 15 U.S.C. § 1115(b), Wrigley's incontestable registrations are conclusive evidence of the validity of the marks listed in the registrations, Wrigley's ownership of the marks, and Wrigley's exclusive right to use the marks in commerce in connection with the identified goods.

33.     Wrigley is the exclusive owner of the Wrigley Trademarks and all of the related business and goodwill throughout the United States.  Attached hereto as **Exhibit A** are true and correct copies of the trademark registration certificates for the Wrigley Trademarks as issued by the United States Patent and Trademark Office.

34.     As a result of the efforts described herein, each of the Wrigley Trademarks has acquired strong secondary meaning signifying Wrigley.

35.     Due to Wrigley's extensive marketing efforts and sales success, the Wrigley Trademarks have each become extremely valuable corporate assets.  Wrigley has successfully licensed its trademarks to third parties who agree to abide by Wrigley's guidelines for use of the trademark(s).

36.     The Wrigley Trademarks are strong and distinctive marks, which are immediately recognized by the public as a brand indicator of, and indelibly associated with, Wrigley's products.  The Wrigley Trademarks identify authorized products that emanate from, or are licensed or sponsored by Wrigley.

## II.     THE EMERGENCE OF INFRINGING CANNABIS PRODUCTS

37.     As the market for cannabis products and, in particular, edible cannabis products has grown, certain unscrupulous businesses have manufactured, packaged, and/or sold unauthorized and counterfeit edible cannabis products that nearly-identically resemble famous candy brands, including Wrigley's SKITTLES® and STARBURST® candies, in order to benefit from the established goodwill of those brands.

38.     One such unauthorized product, often marketed under the name "Medicated Skittles," is sold in packaging illegally using the SKITTLES® Mark and Trade Dress, designed to imitate and counterfeit Wrigley's famous SKITTLES® candy and causing confusion amongst consumers and others as to the source of the product and/or whether Wrigley has authorized, endorsed, or is affiliated with the "Medicated Skittles" product—which it ***has not*** and ***is not***.

39.     Below is a comparison of Wrigley's SKITTLES® product to the nearly-identically packaged counterfeit "Medicated Skittles" product:

| Wrigley's SKITTLES® | Infringing "Medicated Skittles" |
|---|---|
|  |  |

40.     Additionally, these unscrupulous businesses have similarly begun manufacturing, marketing, and/or distributing unauthorized and counterfeit edible cannabis products and packaging which infringes on Wrigley's STARBURST® Mark and Trade Dress, again attempting to usurp the goodwill Wrigley has created in its STARBURST® mark without regard for Wrigley's intellectual property rights nor the great harm being caused to the public. Similarly, Wrigley has not sponsored or endorsed, and is not affiliated with, any of the products discussed herein which infringe on Wrigley's STARBURST® Mark and Trade Dress.

41.     A comparison between examples of Wrigley's STARBURST® candy product and the infringing counterfeit products—often sold as "Starburst Gummies" or "Cannaburst Gummies" (hereinafter referred to as "Starburst Gummies")—is shown below:



| Wrigley's STARBURST® | Infringing "Starburst Gummies" |
|---|---|

42.     Not only do the infringing "Medicated Skittles" and "Starburst Gummies" products and packaging violate Wrigley's intellectual property rights, as Wrigley has not authorized or permitted the use of the Wrigley Trademarks for any such product, but they also pose a great danger to the public as anyone, children and adults alike, could easily mistake the

infringing cannabis-infused products, with their confusingly-similar packaging, for Wrigley's famous and beloved candies and inadvertently ingest the psychoactive compound THC contained therein.

43. Furthermore, the packaging for the "Medicated Skittles" product indicates that the bag contains 20 pieces of cannabis edibles at 20 milligrams of THC per piece, for a total of 400 milligrams of THC per bag; various versions of the "Starburst Gummies" packaging indicate that the bags contain either 500 milligrams or 408 milligrams of THC. These amounts are in direct violation of Illinois' Cannabis Regulation and Tax Act which specifies that a package of cannabis-infused products may not exceed 100 milligrams of THC per package nor 10 milligrams of THC per serving within that package. 410 ILCS § 705/55-21(k). Thus, the public harm caused by the manufacture and distribution of these infringing products and the confusingly-similar packaging in which they are sold is compounded by the illegally high dosages of THC being infused into the products.

44. Just as Wrigley actively enforced its intellectual property rights against manufacturers and distributors of infringing "candy-flavored" e-liquid products for e-cigarettes when those products presented a risk of harm to children and the public at large, Wrigley here seeks to prevent the further unauthorized and dangerous use of its Wrigley Trademarks on edible cannabis-infused products and the packaging in which they are sold.

**III.    DEFENDANTS' WRONGFUL ACTS**

45. Defendants play a critical role in this dangerous ecosystem of infringing edible cannabis products as they manufacture, market, and offer for sale the packaging in which third-party retailers will place their counterfeit THC-infused edible cannabis products—packaging which blatantly and without authorization uses the famous Wrigley Trademarks to confuse

12

consumers as to the source of the products, creating the hazard that the edible cannabis products could be mistaken for Wrigley's candy products.

## A. WRONGFUL ACTS OF THE PACKAGING PAPI DEFENDANTS

46.     Upon information and belief, the Packaging Papi Defendants market and sell the infringing packaging online via their website located at https://www.packagingpapi.com/. Among other jurisdictions, the Packaging Papi Defendants offer their products to consumers located in the State of Illinois, including in this District.

47.     Rather than develop their own brand names for the cannabis product packaging they sell, the Packaging Papi Defendants instead chose to use the Wrigley Trademarks, without authorization or license, in the design and marketing of their products, exhibiting no regard for Wrigley's intellectual property rights, the consumer confusion likely to be caused by the infringing products described herein, or the danger posed by distributing packaging for cannabis-infused products which imitates Wrigley's famous candies.

48.     As of the date of this filing, the Packaging Papi Defendants are marketing and offering for sale two types of packaging for edible cannabis products which violate Wrigley's rights in the Wrigley Trademarks.  Those products are: (1) "Skittles EMPTY Mylar Bags" (offered in five different design variations: "Original," "Wild Berry," "Sour," "Zombie," and "Seattle Mix"); and (2) "Starburst Gummies and Cannaburst Berry Sours and Sours Packaging – EMPTY Mylar Bags" (offered in six different design variations: "Starburst Gummies Original (Red)," "Starburst Gummies Sours," "Starburst Gummies (Green)," "Starburst Gummies (Pink)," "Cannaburst – Sours," and "Cannaburst – Berry Sours").  Each of these products, collectively referred to as the "Packaging Papi Infringing Products," is offered for sale on the Packaging Papi Defendants' website in quantities ranging from 1 to 20,000 bags, providing the

third-party cannabis product retailers to whom the Packaging Papi Defendants are marketing these packages the opportunity to distribute counterfeit and infringing packages of edible cannabis products on a massive scale.

49.     The Packaging Papi Infringing Products are pictured below, as they appear on the Packaging Papi Defendants' website:

(1)     "Skittles EMPTY Mylar Bags"



(2)     **"Starburst Gummies and Cannaburst Berry Sours and Sours Packaging – EMPTY Mylar Bags"**



50.     Upon information and belief, the Packaging Papi Defendants adopted and use the Wrigley Trademarks in marketing, offering for sale, and distributing the Packaging Papi Infringing Products with full knowledge of, and in willful disregard of, Wrigley's intellectual property rights, with knowledge that its customers will use the packaging to offer for sale counterfeit goods, and with the intent to take advantage of the goodwill that Wrigley has developed in the Wrigley Trademarks.

## B.   WRONGFUL ACTS OF THE DRIPPACKAGING DEFENDANTS

51.     Upon information and belief, the DripPackaging Defendants market and sell the infringing packaging online via their website located at https://www.drippackaging.com/. Among other jurisdictions, the DripPackaging Defendants offer their products to consumers located in the State of Illinois, including in this District.

52.     Rather than develop their own brand names for the cannabis product packaging they sell, the DripPackaging Defendants instead chose to use the Wrigley Trademarks, without authorization or license, in the design and marketing of their products, exhibiting no regard for Wrigley's intellectual property rights, the consumer confusion likely to be caused by the infringing products described herein, or the danger posed by distributing packaging for cannabis-infused products which imitates Wrigley's famous candies.

53.     As of the date of this filing, the DripPackaging Defendants are marketing and offering for sale a product called "Medicated Original Generic Starburst Gummies 408mg THC *Empty Bags*," (the "DripPackaging Infringing Product" and, collectively with the Packaging Papi Infringing Products, the "Infringing Products") consisting of packaging for edible cannabis products which violate Wrigley's rights in the Wrigley Trademarks.  The DripPackaging Infringing Product is offered for sale on the DripPackaging Defendants' website in quantities ranging from 5 to 200 bags, providing the third-party cannabis product retailers to whom the DripPackaging Defendants are marketing these packages the opportunity to distribute counterfeit and infringing packages of edible cannabis products on a massive scale.

54.     The DripPackaging Infringing Product is pictured below, as it appears on the DripPackaging Defendants' website:



55.     Upon information and belief, the DripPackaging Defendants adopted and use the Wrigley Trademarks in marketing, offering for sale, and distributing the DripPackaging Infringing Product with full knowledge of, and in willful disregard of, Wrigley's intellectual property rights, with knowledge that its customers will use the packaging to offer for sale counterfeit goods, and with the intent to take advantage of the goodwill that Wrigley has developed in the Wrigley Trademarks.

## FIRST CLAIM FOR RELIEF

### Federal Contributory Counterfeiting Against All Defendants

56.     Wrigley realleges the allegations of the preceding paragraphs as if fully set forth herein.

57.     Wrigley owns certain exclusive rights in and to the marks and logos reflected in the SKITTLES® and STARBURST® registrations and the goods covered by those registrations are candy.

58.     On information and belief, Defendants market and offer for sale edible cannabis product packaging necessary for their customers—businesses that market, offer for sale, sell, and distribute edible cannabis candy—and this product packaging bears marks identical to or substantially indistinguishable from the marks and logos in the SKITTLES® and STARBURST® registrations.  Defendants' actions constitute wrongful counterfeiting acts in violation of 15 U.S.C. § 1114.

59.     On information and belief, Defendants market and offer for sale the Infringing Products to their customers with the knowledge and intent that the Infringing Products will be put to use by their customers in marketing, offering for sale, selling, and distributing counterfeit candy in violation of 15 U.S.C. § 1114.

60.     Wrigley has been, and will continue to be, damaged by Defendants' wrongful conduct in an amount to be determined at trial.

61.     Defendants' acts are greatly and irreparably damaging to Wrigley and will continue to damage Wrigley unless enjoined by the Court such that Wrigley is without an adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Federal Trademark Infringement Against All Defendants

62.     Wrigley realleges the allegations of the preceding paragraphs as if fully set forth herein.

63.     Defendants are directly liable for trademark infringement as their acts are likely to cause confusion, mistake, or deception as to source, affiliation, or sponsorship, in violation of 15 U.S.C. §§ 1114, 1125(a).  Furthermore, upon information and belief, Defendants are contributorily liable for trademark infringement as they market and offer for sale the Infringing Products with the knowledge that the Infringing Products will be used to package edible cannabis products which separately and independently infringe on the Wrigley Trademarks.

64.     Upon information and belief, Defendants adopted and use the Wrigley Trademarks with full knowledge of, and in willful disregard of Wrigley's rights in its trademarks, and with the intent to obtain a commercial advantage that Defendants otherwise would not have, making this an exceptional case pursuant to 15 U.S.C. § 1117.

65.     Wrigley has been, and will continue to be, damaged by Defendants' infringement in an amount to be determined at trial.

66.     Defendants' acts are greatly and irreparably damaging to Wrigley and will continue to damage Wrigley unless enjoined by the Court such that Wrigley is without an adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### Federal Trademark Dilution Against All Defendants

67.     Wrigley realleges the allegations of the preceding paragraphs as if fully set forth herein.

68.     The Wrigley Trademarks are inherently distinctive and famous under 15 U.S.C. § 1125(c).

69.     Defendants' unlawful use of the Wrigley Trademarks in commerce began long after the Wrigley Trademarks became famous.

70.     Defendants' conduct causes, and will continue to cause, dilution of the distinctive quality of the famous Wrigley Trademarks.

71.     Upon information and belief, Defendants adopted and use the Wrigley Trademarks with full knowledge of Wrigley's intellectual property rights therein, and with the willful intention to trade on Wrigley's reputation and/or cause dilution of the famous Wrigley Trademarks, making this an exceptional case pursuant to 15 U.S.C. § 1117.

72.     Wrigley has been, and will continue to be, damaged by Defendants' infringement in an amount to be determined at trial.

73.     Defendants' acts are greatly and irreparably damaging to Wrigley and will continue to damage Wrigley unless enjoined by the Court such that Wrigley is without an adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### Federal Unfair Competition Against All Defendants

74.     Wrigley realleges the allegations of the preceding paragraphs as if fully set forth herein.

75.     Defendants' acts are likely to cause confusion or mistake, or to deceive as to Defendants' affiliation, connection, or association with Wrigley, or as to the origin, sponsorship, or approval of Defendants' goods.  Defendants' acts constitute unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

76.     Upon information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith, making this an exceptional case.

77.     Wrigley has been, and will continue to be, damaged by Defendants' infringement in an amount to be determined at trial.

78. Defendants' acts are greatly and irreparably damaging to Wrigley and will continue to damage Wrigley unless enjoined by the Court such that Wrigley is without an adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### Deceptive Trade Practices Pursuant to 815 ILCS §§ 510/1, *et seq*. Against All Defendants

79. Wrigley realleges the allegations of the preceding paragraphs as if fully set forth herein.

80. Defendants have knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.* by causing likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective products or services; causing likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of Defendants or their products with Wrigley products; and using deceptive representations or designations of origin in connection with Defendants' products.

81. The unauthorized use by Defendants of the Wrigley Trademarks is causing and is likely to cause substantial injury to the public and to Wrigley, and Wrigley has no adequate remedy at law for this injury. Wrigley is entitled to injunctive relief and to an award of its costs and attorney's fees under 815 ILCS § 510/3.

## SIXTH CLAIM FOR RELIEF

### Common Law Unfair Competition Against All Defendants

82. Wrigley realleges the allegations of the preceding paragraphs as if fully set forth herein.

83. Defendants' acts constitute common law trademark infringement in violation of the common law of the various states, including the State of Illinois.

84. Upon information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith.

85. Defendants' acts are greatly and irreparably damaging to Wrigley and will continue to damage Wrigley unless enjoined by the Court such that Wrigley is without an adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Wrigley respectfully requests that this Court:

1. Enter judgment that Defendants have violated the Lanham Act, 15 U.S.C. §§ 1114, 1125; 815 ILCS §§ 510/1, *et seq.*, and Illinois common law, and that such violations were willful and intentional, making this an exceptional case;

2. Award Wrigley statutory damages in the amount of $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, in a total amount to be determined at trial, for Defendants' willful contribution to the counterfeiting of the Wrigley Trademarks and pursuant to 15 U.S.C. § 1117(c)(2);

3. Issue a preliminary and permanent injunction enjoining and restraining Defendants, their officers, agents, servants, employees, successors, assigns, and all other persons acting in concert or in participation with Defendants, jointly and severally, from directly or indirectly engaging in (a) contributory counterfeiting of Wrigley's SKITTLES® and STARBURST® registrations, (b) any further trademark infringement, trademark dilution, unfair competition, or deceptive business practices, including making, offering for sale, or selling any products that feature marks confusingly similar to the Wrigley Trademarks, and (c) doing any

other act calculated or likely to induce or cause confusion or the mistaken belief that Defendants or their products are in any way affiliated, connected, or otherwise associated with Wrigley or its products;

4. Require Defendants to immediately recall from all distribution channels all products, packaging, labels, wrappers, advertising, and promotional materials bearing or infringing on the Wrigley Trademarks;

5. Require Defendants to immediately deliver to Wrigley for destruction all products, packaging, labels, wrappers, digital or electronic images or files, advertising, and promotional materials bearing or infringing on the Wrigley Trademarks, pursuant to 15 U.S.C. § 1118;

6. Order Defendants to account to Wrigley all profits wrongfully derived by their unlawful conduct and to pay to Wrigley:

     a. all monetary actual and/or statutory damages sustained and to be sustained by Wrigley as a consequence of Defendants' unlawful conduct, including lost profits and corrective advertising damages, in an amount to be determined at trial;

     b. all profits, gains, and advantages obtained by Defendants from their unlawful conduct;

     c. exemplary damages, including treble damages resulting from Defendants' unlawful conduct; and

     d. pre-judgment interest on all damages.

7. Order Defendant to pay Wrigley's costs and disbursements in this action, including its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and 815 ILCS § 510;

8. That the Court order those in privity with, working with, or providing services of any kind to Defendants and those with notice or receipt of the injunction, and any Internet search engines, domain name registrars, domain name registries, Internet Service Providers, and web

hosts, shall: (a) be and are restrained and enjoined from facilitating access to any and all websites and accounts through which Defendants engage in the counterfeiting and/or infringing use of the Wrigley Trademarks, and any account(s) associated with the same; (b) be and are restrained and enjoined from altering, interlining, removing, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in the actual or constructive care, custody, or control of Defendants that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located; (c) be ordered to preserve copies of all documents, files, electronically-stored information and things relating to the websites controlled by Defendants that offer products or packaging bearing the Wrigley Trademarks and take steps to retrieve files that may have been deleted before entry of this injunction; (d) be ordered to provide any and all identification, contact, and registration information associated with those websites; and (e) be ordered to produce any and all documents and electronically-stored information regarding access, download, and visitors to the websites;

9. Direct that Defendants file with this Court and serve on counsel for Wrigley within thirty days after entry of any injunction issued by the Court, a sworn written statement pursuant to 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendants have complied with the injunction; and

10. Order any such other or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Wm. Wrigley Jr. Company respectfully demands a trial by jury of all issues so triable by a jury.

Dated: May 3, 2021                                  Respectfully submitted,

                                                    By: /s/ *Douglas N. Masters*
                                                        Douglas N. Masters
                                                        Laura K. McNally
                                                        Neil G. Nandi
                                                        LOEB & LOEB LLP
                                                        321 N. Clark Street, Suite 2300
                                                        Chicago, IL 60654
                                                        Tel:  312-464-3100
                                                        Fax:  312-464-3111
                                                        dmasters@loeb.com
                                                        lmcnally@loeb.com
                                                        nnandi@loeb.com

                                                        *Attorneys for Plaintiff Wm. Wrigley Jr.*
                                                        *Company*